```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
JUDITH P. BROACH as the Court-Appointed                           :
Independent Fiduciary of the EXHIBITION                           :
EMPLOYEES LOCAL 829 I.A.T.S.E. PENSION AND                        :
ANNUITY FUNDS, EXHIBITION EMPLOYEES                               :
LOCAL 829 I.A.T.S.E. PENSION FUND, and                            :
EXHIBITION EMPLOYEES LOCAL 829 I.A.T.S.E.                         :
ANNUITY FUND,                                                     :
                                                                  :
                                                                  :
                                                                  :
                           Plaintiffs,                            :
              -v-                                                 :
                                                                  :
METROPOLITAN EXPOSITION SERVICES, INC.,                           :
                                                                  :
                           Defendant.                             :
                                                                  :
------------------------------------------------------------------X
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/10/2020
```

20-cv-0165 (LJL)

OPINION & ORDER

LEWIS J. LIMAN, United States District Judge:

Plaintiffs Exhibition Employees Local 829 I.A.T.S.E. Pension Fund (the "Pension Fund") and Exhibition Employees Local 829 I.A.T.S.E. Annuity Fund (the "Annuity Fund," and collectively, the "Funds") and Judith P. Broach as the Court-Appointed Independent Fiduciary of the Funds (the "Independent Fiduciary," and together with the Funds, "Plaintiffs") brought the instant action pursuant to Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132, 1145, to enforce the obligation of Defendant Metropolitan Exposition Services, Inc. ("Metropolitan" or "Defendant") to make contributions to the Funds pursuant to a collective bargaining agreement between Metropolitan and Exhibition Employees Local 829 I.A.T.S.E. (the "Union").

Plaintiffs now move, pursuant to Fed. R. Civ. P. 55(b)(2), for entry of a default judgment against Metropolitan. For the reasons set forth below, Plaintiff's unopposed motion is granted in part and denied in part.

## BACKGROUND

**A.     The Collective Bargaining Agreement**

Metropolitan was party to a collective bargaining agreement ("CBA") with the Union, which required Metropolitan to make monthly contributions to the Funds on behalf of employees designated as covered by the CBA. Dkt. No. 1 (the "Complaint" or "Compl.") ¶ 9.[1] The CBA was to be effective from September 1, 2011 until August 31, 2016. Compl., Ex. B (the "CBA") at 7. It was signed by the President/General Manager/CFO of Metropolitan and by the President/Secretary-Treasurer of the Union. *Id.*

The CBA covers "employees engaged to perform work in the operation of [Metropolitan]'s business and equipment in connection with" its provision of general contracting services for exhibition and trade shows. *Id.* ¶ 1. It enumerates duties within those general contracting services, including "the installation of exhibits, booths, trade shows and expositions in auditorium, convention halls, armories, hotels and other places such events may be held," and "employees" refers to Metropolitan's employees who perform the foregoing duties. *Id.* The CBA lists the hourly rates of pay and the specific contributions Metropolitan must make to each of the Funds for the hours worked by these employees. *Id.* ¶ 6(a); *see also* Compl. ¶ 11.

Such contributions are payable on the 10th day of each calendar month. CBA ¶ 7; *see also* Compl. ¶ 12. In the event Metropolitan is in default of making these contributions for five working days, it is obligated to pay interest calculated at 6% on monies due to the Funds from the date when payment was due to the date when payment is made, together with all expenses incurred in the collection of such monies. CBA ¶ 12(a); *see also* Compl. ¶ 13.

---

[1] The following facts are drawn from the Complaint and the materials submitted in support of Plaintiffs' motion for default judgment.

The CBA states that "[a]ll complaints, grievances and disputes involving any employees or interpretation of this contract shall be taken up for adjustment between [Metropolitan] and the representatives of the Union" and that "[s]hould the parties fail to agree with respect thereto, then and in that event, the matter shall be submitted to final and binding arbitration." *Id.* ¶ 9. However, "[i]n the case of an Employer [(*i.e.*, Metropolitan)] that fails to make the contributions to the Plan(s) for which it is obligated, in accordance with the terms and conditions of its obligation, the Trustees may bring an action on behalf of the Plan pursuant to the applicable provisions of either state or federal law, or both, to enforce the Employer's obligation." *Id.* ¶ 15(a). "At their option, the Trustees may also elect to proceed through Arbitration." *Id.* ¶ 15(c).

"In any action" under Paragraph 15(a) of the CBA in which "judgment is awarded in favor of the Plan(s), [Metropolitan] shall pay to the Plan(s), in accordance with the court's award":

> (i) the unpaid contributions,
> (ii) interest on the unpaid contributions, determined at the rate prescribed by law,
> (iii) liquidated damages equal to the greater of:
>     (A) the amount of interest charged on the unpaid contributions, or
>     (B) 20 percent of the unpaid contributions,
> (iv) reasonable attorney's fees and costs of the action, and
> (v) such other legal or equitable relief as the court deems appropriate.

*Id.* ¶ 15(b).

**B.    Negotiation Efforts**

On February 19, 2019, the Funds' auditor Novak Francella LLC (the "Auditor") completed a compliance review of Metropolitan's payroll and other related records for the period from January 1, 2014 through January 31, 2016 (the "Report"). Compl. ¶ 15; *see* Dkt. No. 23-4. The Report found that the total amount owed to the Funds as of February 19, 2019 was $343,456.09, though the Complaint argues that the Report understates liquidated damages and

3

that the total amount owed to the Funds was $388,834.71.[2]  Compl. ¶¶ 16 & 16 n.1.  This amount was comprised of unpaid contributions and liquidated damages and interest on unpaid contributions due to the Pension Fund and Annuity Fund.  *Id.* ¶ 16.  The assessment of unpaid contributions was based upon Internal Revenue Service Forms 1099 that showed payments to third parties for performance of covered work and hours of work for which covered employees were paid but for which Metropolitan failed to make contributions to the Funds.  *Id.* ¶ 17; Dkt. No. 23-4.[3]

On the same day, February 19, 2019, the Auditor forwarded the Report to the Independent Fiduciary and Metropolitan.  Compl. ¶ 18; *see* Dkt. No. 23-5.  Metropolitan did not respond.  Compl. ¶ 19.

On March 26, 2019, the Funds' third-party administrator notified Metropolitan that it had failed to pay the amounts specified in the Report and demanded that it submit all outstanding contributions, along with interest, liquidated damages, and attorneys' fees and costs, within thirty days.  *Id.* ¶ 20; *see id.*, Ex. E.  Metropolitan did not respond.  *Id.* ¶ 21.  On May 2, 2019 and on June 19, 2019, the Funds' third-party administrator again demanded payment of the same amounts and requested that they be paid within ten days.  *Id.* ¶¶ 22, 24; *see id.*, Exs., F-G.  Metropolitan did not respond.  *Id.* ¶¶ 23, 25.

---

[2] The Report found that Metropolitan owed to: (1) the Pension Fund (a) unpaid monthly contributions of $80,612.09, (b) liquidated damages of $16,122.42, and (c) interest of $33,458.21 on unpaid contributions through the date of the Report; and (2) the Annuity Fund (a) unpaid monthly contributions of $132,300.38, (b) liquidated damages of $26,460.08, and (c) interest of $54,502.91 on unpaid contributions through the date of the Report.  Compl. ¶ 16.  The Complaint argues that Metropolitan actually owed liquidated damages of $33,458.21 to the Pension Fund and of $54,502.91 to the Annuity Fund.  *Id.* ¶ 16 n.1.

[3] Metropolitan entered into an asset purchase agreement with a Texas corporation that closed on or about February 1, 2016.  Compl. ¶ 32.  Plaintiffs assert that this asset sale did not relieve Metropolitan of liability for unpaid contributions, interest, or liquidated damages owed to the Funds for any period prior to the date of such sale.  *Id.* ¶ 33.

On August 12, 2019, Plaintiffs' counsel sent to Metropolitan's chief executive officer a copy of the Report and the letters from March 26, May 2, and June 19, 2019. *Id.* ¶ 26.  On August 22, 2019, counsel for Metropolitan disputed the findings of the Report and disclaimed the owed amounts. *Id.* ¶ 27; *see id.*, Ex. I.  On December 13, 2019, Plaintiffs' counsel sent a revised report that recalculated interest due on outstanding contributions through December 13, 2019 and calculated that the total amount owed to the Funds was $364,245.67 (the "December 13, 2019 Report"). *Id.* ¶ 28; *see* Dkt. No. 23-7. [4]  The December 13, 2019 Report calculated that Metropolitan owed total interest of $41,329.47 to the Pension Fund and $67,421.23 to the Annuity Fund as of December 13, 2019.  Compl. ¶ 28.  Metropolitan did not respond to the December 13, 2019 Report.  *Id.* ¶ 29.

On February 24, 2020, after the commencement of this action, Metropolitan provided the Auditor with documentation that resulted in a substantial reduction of the assessed total amount due to the Funds.  Dkt. No. 20 ¶ 15.  Based on a revised March 3, 2020 assessment, the total amount owed was reduced to $37,212.58 (the "March 3, 2020 Report").  *Id.*; *see* Dkt. No. 23-10.  On March 19, 2020, Metropolitan made a partial payment to the Funds in the sum of $378.62.  Dkt. No. 20 ¶ 16.

On May 5, 2020, the Auditor updated its assessment to conclude that Metropolitan owed the Funds a total amount of $37,562.46 ("May 5, 2020 Report").  *Id.* ¶ 17; *see* Dkt. No. 23-11.  On June 11, 2020, Plaintiffs submitted a supplemental declaration with a revised report by the Auditor that increased the amount of interest and liquidated damages and concluded that Metropolitan owed the Funds a total amount of $37,966.64 in unpaid contributions, interest, and

---

[4] The Complaint argues that the December 13, 2019 Report again understated liquidated damages and that the total amount owed to the Funds was $430,413.87 based on liquidated damages of $41,329.47 owed to the Pension Fund and of $67,421.23 owed to the Annuity Fund.  Compl. ¶ 28 n.3.

5

liquidated damages through June 9, 2020 (the "June 9, 2020 Report").  Dkt. No. 23 ¶ 4; *see* Dkt. No. 23-1.

## PROCEDURAL HISTORY

This action was commenced by complaint filed on January 8, 2020.  Dkt. No. 1.  The case was assigned to the Honorable Valerie E. Caproni before it was transferred to the undersigned on February 4, 2020.

The Court held an initial pretrial conference on February 21, 2020.  Defendant did not appear.  During the conference, "counsel for Plaintiffs conveyed to the Court that he had been in communication with Defendant, which had asked for one week to engage in settlement discussions after which Defendant [would] retain counsel for this action."  Dkt. No. 12.  The Court scheduled a conference for March 20, 2020 and directed the parties to submit a joint proposed case management plan by March 13, 2020.  *Id.*  The Court directed that, if Defendant did not appear in the action by March 13, Plaintiffs were to file a motion for default judgment.  *Id.*  The Court ordered counsel for Plaintiffs to notify Defendant of its order.

Defendant did not appear in the action or at the March 20 conference, which was held telephonically.  During the conference, counsel for Plaintiffs represented he "has been in settlement discussions with Defendant and conveyed that Defendant does not intend to appear in this case if the parties do not reach an agreement."  Dkt. No. 14.  The Court scheduled a conference for April 23, 2020 and directed the parties to submit a joint proposed case management plan by April 20, 2020.  *Id.*  The Court directed that, if Defendant did not appear in the action by April 20, Plaintiffs were to file a motion for default judgment.  *Id.*  The Court ordered counsel for Plaintiffs to notify Defendant of its order.

The April 23 conference was held telephonically.  Defendant did not appear in the action or at the April 23 conference; however, a corporate representative from Defendant was present at

6

the conference.  During the conference, counsel for Plaintiffs said that the parties had come to an agreement on one issue and were negotiating with respect to other outstanding issues.  Counsel for Plaintiffs "asked for another week to engage in settlement discussions."  Dkt. No. 16.  The Court directed that, if Defendant did not appear in the action by May 4, 2020, Plaintiffs were to file a motion for default judgment.  *Id.*  The Court scheduled a hearing on the motion for May 29, 2020.  *Id.*  The Court ordered counsel for Plaintiffs to notify Defendant of its order.  *Id.*

Plaintiffs filed a motion for default judgment on May 6, 2020.  Dkt. No. 19.  Defendant did not appear at the telephonic hearing on May 29, and during the hearing, counsel for Plaintiffs conveyed that Defendant's corporate representative with whom he had been corresponding had stopped responding to his inquiries over the past ten days or so.  Dkt. No. 21 at 2:6-10; *see also id.* at 2:24-3:1.  Plaintiff's counsel further conveyed that he gave notice to Defendant of the hearing through telephone and email, and that he had served the default judgment papers by mail to the corporate address.  *See id.* at 3:6-13.

On June 11, 2020, Plaintiffs filed a supplemental declaration in support of their motion for default, which attached the June 9, 2020 Report and supporting material.  *See* Dkt. No. 23.

## LEGAL STANDARD

Fed. R. Civ. P. 55 sets forth a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default, and the entry of a default judgment.  *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).

The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011); *see* Fed. R. Civ. P. 55(a).  The second step, entry of a default judgment, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to

which the court decides it is entitled, to the extent permitted" by the pleadings. *Mickalis Pawn Shop*, 645 F.3d at 128; *see also* Fed. R. Civ. P. 55(b). Whether entry of default judgment at the second step is appropriate depends upon whether the allegations against the defaulting party are well-pleaded. *See Mickalis Pawn Shop*, 645 F.3d at 137.

Because a party in default does not admit conclusions of law, "a district court need not agree that the alleged facts constitute a valid cause of action." *Id.* (citation omitted); *see Spin Master Ltd. v. 158*, 2020 WL 2766104, at *9 (S.D.N.Y. May 28, 2020) ("The essence of Fed. R. Civ. P. 55 is that a plaintiff can obtain from a default judgment relief equivalent to but not greater than that it would obtain in a contested proceeding assuming it prevailed on all of its factual allegations."). Therefore, this Court is "required to determine whether the plaintiff's allegations are sufficient to establish the defendant's liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). A party later challenging the entry of a default judgment must satisfy the "good cause shown" standard in Fed. R. Civ. P. 55(c), which requires a court to "weigh (1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013).

"The legal sufficiency of these claims is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the non-defaulting party's favor." *WowWee Grp. Ltd. v. Meirly*, 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019). A default judgment entered on well-pleaded allegations does not reach the issue of damages, and Plaintiffs "must therefore substantiate [their] claim for damages with evidence to prove the extent of those damages." *Hood v. Ascent Med. Corp.*, 2016 WL 1366920, at *15

(S.D.N.Y. Mar. 3, 2016), *report and recommendation adopted*, 2016 WL 3453656 (S.D.N.Y. June 20, 2016), *aff'd*, 691 F. App'x 8 (2d Cir. 2017).

## DISCUSSION

### A.   Jurisdiction and Standing

As an initial matter, Defendant is subject to personal jurisdiction because it does business in New York, Compl. ¶ 9, and venue is proper in the Southern District of New York under 29 U.S.C. § 1132(e)(2) because the Funds are administered in this District, *id.* ¶ 3.

The Court also has subject matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C § 1132(e)(1), but only because the Independent Fiduciary, not the Funds, has standing to pursue this action.

The Funds assert that they have standing to pursue this action under 29 U.S.C. § 1132(d)(1), which provides that an "employee benefit plan may sue or be sued under this subchapter as an entity." *Id.* ¶ 8.  The Complaint alleges that the Funds have maintained, at all relevant times, "employee pension benefit plan[s]" within the meaning of 29 U.S.C. §§ 1002(2)(A), 1002(37).  *Id.*  The Pension Fund's plan is a "defined benefit plan" under 29 U.S.C. § 1002(35), and the Annuity Fund is a "defined contribution plan" under 29 U.S.C. § 1002(34).  *Id.*  The Funds' plans are "multiemployer plans" within the meaning of 29 U.S.C § 1002(37) and they are maintained "for the purposing of providing retirement benefits to eligible participants and beneficiaries through trust funds established and maintained." *Id.*

Section 1132(d)(1) discusses only the "[s]tatus of an employee benefit plan as [an] entity," and the Second Circuit has held that Section 1132(a)(3) of ERISA exclusively enumerates the plaintiffs that have standing to sue under ERISA, which is limited to a "participant, beneficiary, or fiduciary." 29 U.S.C. § 1132(a)(3); *see Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assur. Co.*, 700 F.2d 889, 891–93 (2d Cir. 1983) (finding

9

that 29 U.S.C. § 1132(a)(3) does not "authorize a pension fund to assert a cause of action," and therefore "the district court was without subject matter jurisdiction over the Fund's complaint"). "Although '[a]n employee benefit plan may sue . . . as an entity'" under Section 1132(d)(1), "this does not imply that plans may sue as non-enumerated plaintiffs under Section 1132(a), because 'the jurisdictional provisions of ERISA do not on their face authorize a pension fund to assert a cause of action.'" *Dist. Council 1707 Local 389 Home Care Emps.' Pension & Health & Welfare Funds v. Strayhorn*, 2013 WL 1223362, at *5 (S.D.N.Y. Mar. 25, 2013) (quoting *Pressroom Unions*, 700 F.3d at 891); *see also New Jersey Carpenters Annuity Fund v. Meridian Diversified Fund Mgmt., LLC*, 2011 WL 1842772, at *2 (S.D.N.Y. May 11, 2011) ("The funds themselves would have no standing to bring the claims involved here if they were asserted as ERISA claims.").[5] Section 1145 similarly does not confer jurisdiction on its own but rather "creates a substantive right" that an employer be required to make contributions to a multiemployer plan as specified in the collective bargaining agreement. *Metal Lathers Local 46 Pension Fund v. River Ave. Contracting Corp.*, 954 F. Supp. 2d 250, 255 (S.D.N.Y. 2013) ("Thus, to the extent that plaintiffs seek to assert federal question jurisdiction under ERISA, they must fit within the requirements of § 502(a) and cannot separately look to § 1145.").

However, as "fiduciary" of the Funds, the Independent Fiduciary has standing to commence this action under Section 1132(a)(3), which provides that a civil action may be brought "by a participant, beneficiary, or fiduciary" to "enjoin any act or practice which violates

---

[5] *See also Bricklayers Ins. Welfare Fund v. Manley Const. Corp.*, 2014 WL 4722754, at *3 (E.D.N.Y. Aug. 13, 2014), *report and recommendation adopted in part*, 2014 WL 4699710 (E.D.N.Y. Sept. 22, 2014) ("Thus, while the Funds can 'sue or be sued' under ERISA, [29 U.S.C.] § 1132(d)(1), they do not fall within the scope of any of the terms used in either subsection (e)(1) or subsection (a)(3) of Section 1132."); *Arch Ins. Co. v. DCM Grp. LLC*, 2012 WL 3887098, at *3 (E.D.N.Y. Aug. 2, 2012), *report and recommendation adopted*, WL 3887654 (E.D.N.Y. Sept. 7, 2012) ("The Funds themselves, although named as plaintiffs, all lacked standing to assert their claims under ERISA.").

any provision of this title or the terms of the plan," or "to obtain other appropriate equitable relief to (i) redress such violation or (ii) to enforce any provision of this title or the terms of the plan." 29 U.S.C. § 1132(a)(3); *see* 20 U.S.C. § 1132(g) ("In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."); *see also Silverman v. Teamsters Local 210 Affiliated Health & Ins. Fund*, 761 F.3d 277, 285 (2d Cir. 2014). As a result, the Funds' recovery against Metropolitan "is not genuinely at issue," as the Independent Fiduciary "has standing to collect the judgment on their behalf." *Bricklayers Ins. Welfare Fund*, 2014 WL 4699710, at *3 (declining to decide "whether the Funds would have standing to sue under ERISA if [the fiduciary] had not sued" also as a plaintiff).[6]

**B.     Liability**

The factual allegations of the Complaint establish that Defendant is liable for the delinquent pension and annuity contributions under 29 U.S.C. § 1145 and the CBA.

Section 1145 requires that "every employer who is obligated to make contributions . . . under the terms of a collective bargaining agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C § 1145. An ERISA "employer" is defined as "any person acting directly as an employer, or indirectly in the interest of an employer in relation to an employee benefit plan." 29 U.S.C. § 1002(5); *see Greenblatt v. Delta Plumbing & Heating Corp.*, 68 F.3d 561, 575 (2d Cir. 1995) (applying this definition of "employer" to 29 U.S.C. § 1145).

Metropolitan, as employer, and the Union are parties to the CBA, which requires Metropolitan to make contributions to the Funds and the Union at specified rates on behalf of its

---

[6] For the avoidance of confusion, the Court continues to refer to "Plaintiffs" throughout this decision.

11

employees covered by the CBA. Plaintiffs thus have sufficiently pleaded that Metropolitan was "obligated to make contributions" as an "employer" to the Funds in accordance with the terms of the CBA between January 1, 2014 and January 31, 2016. *See, e.g.*, *Trustees of Sheet Metal Workers' Local Union No. 28 Funds & Plans v. Air Wise Heating & Cooling, Inc.*, 2020 WL 2846693, at *2 (S.D.N.Y. June 2, 2020), *report and recommendation adopted*, 2020 WL 3440503 (S.D.N.Y. June 23, 2020); *Trustees of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Ogee Constr., LLC*, 2018 WL 5886441, at *1 (S.D.N.Y. Nov. 9, 2018).

Plaintiffs have also sufficiently pleaded that Metropolitan failed to make these contributions—they proffer the CBA and various reports completed by its Auditor that concluded that certain contributions were not remitted, including the initial Report and the December 13, 2019, March 3, 2020, May 5, 2020, and June 9, 2020 Reports. *See* Compl., Ex. B; Dkt. Nos. 23-1, 23-4, 23-7, 23-10, 23-11. They further submit letters advising Metropolitan of the breach and the letter response from Metropolitan that disputed the amount in the Report, but that did not say the basis for the dispute. *See* Compl., Exs. E-I; Dkt. Nos. 23-5, 23-6.

**C.  Damages**

Plaintiffs seek damages consisting of unpaid contributions to the Funds, interest, liquidated damages, and attorneys' fees and costs under 29 U.S.C. § 1145 and under the CBA.

Damages for violating Section 1145 are assessed under Section 1132(g)(2), which provides that "[i]n any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan":

    (a)   the unpaid contributions,
    (b)   interest on the unpaid contributions,
    (c)   an amount equal to the greater of —

>> (i) interest on the unpaid contributions, or
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the [unpaid contributions],
> (d) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (e) such other legal or equitable relief as the court deems appropriate. For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan[.]

29 U.S.C. § 1132(g)(2). Plaintiffs also request an inquest hearing to determine the full amount of interest, liquidated damages, and attorneys' fees and costs due to the Funds for the period after the filing of its supplemental declaration on June 11, 2020. *See* Dkt. No. 23 at 6.

### 1. Unpaid Contributions

In evaluating the damages in a default case, "[w]here a defaulting defendant has not made any submission on a damages inquest, the Court must assess whether the plaintiff has provided a sufficient basis for the Court to determine damages." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012). Plaintiffs seek unpaid contributions for the period between January 1, 2014 and January 31, 2016 of $11,216.35 owed to the Pension Fund and $6,344.74 owed to the Annuity Fund. Dkt. No. 23 at 5 ¶ (i). These amounts were calculated by the Auditor and supported by the payroll records included in the June 9, 2020 Report and attached to Plaintiffs' declaration. *See* Dkt. No. 23-1. The hourly rates in the payroll records used to calculate the contributions due to the Funds were based on the hourly rates of contributions owed by Metropolitan as required by the CBA. *Compare* Dkt. No. 23-1 *with* CBA ¶ 6(a). Plaintiffs submitted various reports along with their supporting payroll records. Defendant has neither appeared in the case nor "introduced any evidence that would suggest that these findings are inaccurate." *Trustees of Sheet Metal Workers' Local Union No. 28 Funds & Plans*, 2020 WL 2846693, at *2–3.

The Court finds that the various reports are based on substantive evidence and Plaintiffs are entitled to the amounts request in unpaid contributions.

### 2. Prejudgment Interest

Employers who make contributions to an employee benefit plan must "make such contributions in accordance with the terms and conditions of such plan." 29 U.S.C. § 1145. If the employer fails to make contributions in accordance with the plan, Section 1132(g)(2) provides that, following a successful action by a plan's trustees to recover unpaid contributions due under a plan, "the court shall award the plan . . . (B) interest on the unpaid contributions." 29 U.S.C. § 1132(g)(2). ERISA provides that "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." *Id.*

Pursuant to the CBA, if Metropolitan is in default for five days in making payment of any contributions, it is required to "pay six percent (6%) interest on the monies due . . . from the date when payment was due to the date when payment is made." CBA ¶ 15(a). Paragraph 15(b) of the CBA further provides that in any action in which judgment is awarded in favor of Plaintiffs, Metropolitan shall pay: "(ii) interest on the unpaid contributions, determined at the rate prescribed by law." *Id.* ¶ 15(b).

Plaintiffs request interest on contributions due and unpaid through June 9, 2020 of $6,517.45 to the Pension Fund and $3,685.33 to the Annuity Fund. Dkt. No. 23 ¶ 4.[7] Plaintiffs,

---

[7] The final page of Plaintiffs' declaration requests interest and liquidated damages through May 5, 2020, but Plaintiffs earlier state that "[s]ince the May 5, 2020 revision to the Report, however, the amount of interest and liquidated damages on [the] underlying debt have increased," and they submit the June 9, 2020 Report to list "the amount due the Funds, through June 9, 2020." *Compare* Dkt. No. 23 ¶ 4 *with id.* at 5 ¶ (ii). The amounts listed in Paragraph 4 and on the last page of the declaration are the same, and the Court assumes that Plaintiffs meant to request interest and liquidated damages through the date of June 9, 2020.

14

however, have not sufficiently proffered a basis for how the $6,517.45 and $3,685.33 interest figures were calculated. Plaintiffs are ordered to file an affidavit specifying the basis for their calculations within twenty-one (21) days of the date of this Opinion and Order. *See Int'l Ass'n of Heat & Frost Insulators v. Affiliated Envtl. Servs. NJ, Inc.*, 2017 WL 5153565, at *5 (S.D.N.Y. Nov. 6, 2017) (requiring affidavit showing basis for calculations).

### 3. Liquidated Damages

Pursuant to the CBA and 29 U.S.C. § 1132(g)(2)(C), Plaintiffs are entitled to liquidated damages. The CBA provides that in any action in which judgment is awarded in favor of Plaintiffs, Metropolitan shall pay: "liquidated damages equal to the greater of: (A) the amount of interest charged on the unpaid contributions, or (B) 20 percent of the unpaid contribution." CBA ¶ 15(b). Section 1132(g)(2)(C) similarly provides that "the court shall award the plan . . . (C) an amount equal to the greater of — (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent [of unpaid contributions]." 29 U.S.C. § 1132(g)(2)(C).

Plaintiffs have requested the former relief: liquidated damages equal to interest on the unpaid contributions due to the Pension Fund and to the Annuity Fund. Dkt. No. 23 at 5 ¶ (iii). Those amounts, $6,517.45 to the Pension Fund and $3,685.33 to the Annuity Fund, are greater than 20% of the unpaid contributions, which would be $2,243.27 and $1,268.95, respectively. However, as noted above, Plaintiffs have not proffered a basis for their interest calculations on which their calculation for liquidated damages rely. Plaintiffs are similarly ordered to file an affidavit specifying the amounts of liquidated damages they seek within twenty-one (21) days of the date of this Opinion and Order.

### 4.      Attorneys' Fees and Costs

Plaintiffs seek attorneys' fees in the amount of $20,256 and costs in the amount of $828.33 for the period from December 1, 2019 through June 10, 2020.  Dkt. No. 23 ¶¶ 6-7; *see id.* at 5 ¶ (vi), (viii).   Under Section 1132(g)(2)(D), an award of attorneys' fees and costs is mandatory in an action for unpaid contributions.  *See LaBarbera v. Clestra Hauserman, Inc.*, 369 F.3d 224, 226 (2d Cir. 2004).  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Bldg. Serv. 32BJ Pension Fund v. 1180 AOA Member LLC*, 2020 WL 70947, at *4 (S.D.N.Y. Jan. 3, 2020) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *see Sullivan as Tr. of Stone Setters Local 84 Pension Fund, Annuity Fund, Vacation Fund, Apprentice Fund & Indus. Promotion Fund v. Prestige Stone & Pavers Corp.*, 2020 WL 1528117, at *3 (S.D.N.Y. Mar. 30, 2020) ("In ERISA actions, courts use the lodestar approach to determine reasonable attorney's fees.").

Reasonable hourly rates are the "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation," and the relevant community is "the district in which the court sits."  *Cruz v. Local Union No. 3 of Intern. Broth. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994).  "Courts in this district have approved partner billing rates that range from $350 per hour to $425 per hour in ERISA delinquent contribution cases."  *Bldg. Serv. 32BJ Pension Fund*, 2020 WL 70947, at *5 (collecting cases); *see also Bd. of Trustees of Am. Fed'n of Musicians & Employers' Pension Fund v. Banos*, 2019 WL 2477316, at *6 (S.D.N.Y. May 24, 2019), *report and recommendation adopted as modified*, 2019 WL 2473452 (S.D.N.Y. June 13, 2019) (paralegal fees of $125-$129 were reasonable).

The Court has carefully reviewed Plaintiffs' contemporaneous time records and finds that Plaintiffs' request, including the hourly rate of $295 for counsel, the hours expended, and the

16

nature of the work, is reasonable. The request for attorneys' fees of $20,295 is only slightly lower than the requested award of $37,966.64, but "courts in this District have expressly rejected the notion that a mandatory award of attorneys' fees under ERISA should be determined based solely on the amount of delinquent contributions recovered." *Sullivan as Tr. of Stone Setters Local 84 Pension Fund, Annuity Fund, Vacation Fund, Apprentice Fund, & Indus. Promotion Fund v. Prestige Stone & Pavers Corp.*, 2020 WL 2859006, at *14 (S.D.N.Y. Feb. 4, 2020), *report and recommendation adopted*, 2020 WL 1528117 (S.D.N.Y. Mar. 30, 2020) (awarding $119,130 in attorneys' fees and $23,248 in unpaid contributions, audit costs, interest, and liquidated damages); *see also Trustees of Bricklayers & Allied Craftworkers Local 5 New York Retirement v. Helmer-Cronin Const., Inc.*, 2005 WL 3789085, at *6 (S.D.N.Y. Oct. 24, 2005) ("[R]educing an attorney's fee award based on the amount of damages recovered [is] contrary to the purpose behind the ERISA fee-shifting provision.").

      Although this action resulted in a motion for default judgment, the billing records demonstrate that over ten hours were spent in settlement negotiations with and continued outreach to the Defendant and at three status conferences and the default hearing at which Defendant did not appear. Dkt. Nos. 20-8, 23-2; *see Bd. of Trustees of Am. Fed'n of Musicians & Employers' Pension Fund*, 2019 WL 2477316, at *7. Plaintiffs' counsel also spent time working with the Auditor to produce and update the various reports. *See Bd. of Trustees of Am. Fed'n of Musicians & Employers' Pension Fund*, 2019 WL 2477316, at *7 (awarding attorneys' fees related to time completing audits and collecting amounts due without the need for litigation). And the time spent on each task, measured in tenths of an hour, was reasonable. *See, e.g.*, *King v. Unique Rigging Corp.*, 2006 WL 3335011, at *3 n.1 (E.D.N.Y. Oct. 27, 2006).

Plaintiffs also seek an award of $828.33 in litigation costs. Dkt. No. 23 ¶ 7. These costs consist of the $400 filing fee of the Complaint, process server fees, photocopying fees, electronic legal research fees, and postage fees. *See* Dkt. Nos. 20 ¶ 22, 23 ¶ 6. These costs are support by billing records and are reasonable. *See, e.g.*, *Sullivan*, 2020 WL 2859006, at *15; *see also LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (expenses such as "duplicating, postage, telephone, computerized legal research and other office expenses" are ordinarily recoverable and not absorbed into an attorney fee as overhead).

### 5. Subsequent Damages, Attorneys' Fees, and Costs

Plaintiffs request an inquest hearing to determine the full amount of interest, liquidated damages, and attorneys' fees and costs due to the Funds for the period after June 11, 2020. *See* Dkt. No. 23 at 5 ¶ (x); *see also id.* ¶¶ (iv)-(v), (vii), (ix). Plaintiffs did not submit any documentation for this Court to determine these amounts. Plaintiffs are ordered to file an affidavit specifying the amounts they seek and the basis for their calculations within twenty-one (21) days of the date of this Opinion and Order.

**CONCLUSION**

For the reasons stated herein, the motion for default judgment is GRANTED IN PART and DENIED IN PART.  The Court grants judgment in the amount of $38,645.41 to Plaintiff Independent Fiduciary as follows:

    (i) Unpaid Contributions of $11,216.35 and $6,344.73 on behalf of the Pension Fund and the Annuity Fund, respectively;

    (ii) Attorneys' fees of $20,256; and

    (iii) Costs of $828.33.

Plaintiff must file a supplemental affidavit specifying the basis for the calculations of prejudgment interest and liquidated damages within twenty-one (21) days from the date of this Opinion and Order.  That affidavit shall also include the amounts and calculations for prejudgment interest, liquidated damages, and attorneys' fees and costs after June 11, 2020.

Plaintiff must also file a proposed final judgment, consistent with this Opinion and Order, for the Court's consideration within twenty-one (21) days from the date of this Opinion and Order.

The Clerk of Court is respectfully directed to close Dkt. No. 19.


SO ORDERED.

Dated: July 10, 2020
      New York, New York
                                       LEWIS J. LIMAN
                                       United States District Judge